FILED
2021 Sep-07  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| **ANITA ANN ALEXANDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **6:20-cv-00273-LSC** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF OPINION**

## I.      Introduction

The plaintiff, Anita Ann Alexander ("Alexander" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Alexander timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Alexander was 42 years old at the time of her SSI application, and she attended school through the tenth grade. (*See* Tr. at 230, 60.) Her past work includes

experience as a cook, food service worker, housekeeping cleaner, furniture assembler, electrical accessories assembler, stock clerk, and cashier. (Tr. at 94-95.) Plaintiff claims that she became disabled on November 1, 2014, as a result of limitations imposed by dyslexia, bipolar disorder, schizophrenia, and psychosis. (Tr. at 259, 264). She claimed further that during the Summer of 2017, her mental condition worsened, and she additionally experienced pain in her neck, shoulders, and back. (Tr. at 310).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of

2

impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment

or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since November 1, 2014, the alleged date of the onset of her disability. (Tr. at 13.) According to the ALJ, Plaintiff's degenerative disk disease/osteoarthritis of the cervical and lumbar spine, single episode of a major depressive disorder, and generalized anxiety disorder are "severe impairments." (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff has the following RFC:

> [T]o occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. She can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday and sit, with normal

breaks, for up to eight hours during an eight-hour workday. The claimant can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can tolerate occasional (as the term "occasional" is defined in the DOT) exposure [*sic*] extreme cold, wetness, and working in areas of vibration. She should not be required to work in exposure to extreme heat or humidity. The claimant should avoid exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery. She can perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes. She can have frequent interactions with co-workers and supervisors and members of the general public. The claimant can adapt and respond appropriately to routine changes in the workplace.

(Tr. at 15.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. at 19.) The ALJ also determined that Plaintiff is a "younger individual age 18-49" at 44 years old, has a limited education, and is able to speak in English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as a laundry

classifier, order caller, and small parts assembler. (Tr. at 19-20.) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 1, 2014, through the date of this decision." (Tr. at 20.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ improperly found that she did not have the medically determinable impairment of Parkinson's disease, and (2) there is not substantial

evidence to support the ALJ's decision that she did not have disabling physical impairments.

### A. Failure to Find the Medically Determinable Impairment of Parkinson's Disease

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Alexander, as the claimant. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.

1999)). Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities …."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "degenerative disk disease/osteoarthritis of the cervical and lumbar spine; a major depressive disorder, single episode; and a generalized anxiety disorder." (Tr. at 13). However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ furthered determined

that Plaintiff "does not have medically determinable impairments of schizophrenia or Parkinson's disease." (*Id.*)

Plaintiff challenges this determination, claiming that her treating physician, Dr. Lindsey Jones at Capstone Cottage in Jasper, Alabama, determined that Plaintiff exhibited twenty out of twenty-two symptoms for Parkinson's disease (Tr. at 72), but Plaintiff did not provide any evidence other than her own testimony on this issue (Doc. 11 at Page 14). She asserts that Dr. Jones referred her to Charity Care at University of Alabama, Birmingham ("UAB") for testing for Parkinson's disease. (Tr. at 51, 77). The test was scheduled for July 5, 2018, three weeks after the hearing (Tr. at 51), but nothing in the record indicates that Plaintiff or her attorney submitted or attempted to submit any additional evidence relevant to the issue of whether the Plaintiff had Parkinson's disease. Plaintiff bears the burden of proof, and she failed to meet that burden.

Along with this challenge, Plaintiff asserts that the ALJ failed in her responsibility to fully and fairly develop the record. It is true that the ALJ has a duty "to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and

other evidence regarding his impairments, and "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about h[er] own medical condition, to do so." *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1280; 42 U.S.C. § 423(d)(5)(A). An ALJ has many options, but no affirmative requirements, for settling an inconsistency or insufficiency in a claimant's medical record. *See* 20 C.F.R. § 404.1520b.  She has the option to contact the treating physician, ask the claimant for additional records, request a consultative examination, or ask the claimant and/or others for more information. *Id.* The ALJ may exercise all or none of these potential remedies. *Id.* She is not required to take any of those steps if she determines that weighing the available evidence will be sufficient. *Id.* Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware*, 651 F.2d at 413). "[A]lthough the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v.*

11

*Astrue*, 365 Fed. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Plaintiff's brief asserts that "the ALJ's decision... would certainly be different if the claimant had an actual Parkinson's diagnosis in her medical records." (Doc. 11 at Page 16.) While such a diagnosis might have changed the ALJ's decision, Plaintiff has not demonstrated that such a gap in the record is the result of unfairness or clear prejudice. The record instead reflects a failure on Plaintiff's part to meet her burden of proof. For example, the record indicates that on June 8, 2018, less than a week before the hearing was scheduled, Plaintiff requested a continuance of the hearing until after the test was conducted. (Tr. at 54.) Plaintiff's counsel, Mr. Bevill, indicated that he made the request as soon as he and his client learned the date of the scheduled test. (*Id.*) The ALJ, however, decided to proceed with the hearing on June 14, 2018, but did not issue her opinion until January 30, 2019 (*Id.* at 54, 21). The record reveals no attempts by Plaintiff to submit the results of her test for consideration in the intervening months, even though the ALJ expressed the possibility of leaving the record open for such evidence. (*Id.* at 57.) Moreover, Plaintiff has not presented any evidence of a diagnosis to the Appeals Council or to this Court.

The record also indicates that evidence was excluded from the record because the Plaintiff failed to submit it on time, within five business days of the hearing scheduled on June 14, 2018. (Tr. at 10, 55-57). The ALJ stated, "[I]f I'm going to leave the record open for the additional records two months down the road [the Parkinson's test results from UAB], I'll leave it open to get those in too. And if I don't, I won't." (*Id.* at 57.) The record does not include the additional exhibits, and the ALJ explained in her decision that the records were excluded because they were untimely. (*Id.* at 10.) Plaintiff's failure to submit evidence and do so in a timely fashion does not reflect a failure of the ALJ to fully and fairly develop the record. Nor does it indicate a basis for finding that any gaps in the record resulted from unfairness or prejudice. For these reasons, the Plaintiff's argument fails.

### B. Lack of Substantial Evidence to Support the ALJ's Decision that Plaintiff Does Not Have Disabling Physical Impairments

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the difficulty in moving her neck and the moderate lower lumbar facet anthropathy, along with her multiple surgeries, could reasonably be expected to produce her alleged symptoms. (Doc. 11 at Page 17.)

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584

(11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when Plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the

Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561). A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit "will not disturb a clearly articulated finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Foote*, 67 F.3d at 1562). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the Plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 Fed. App'x 935, 939 (11th Cir. 2011).

The parties are not in dispute as to the first prong of this test. The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (Tr. at 16), and the Defendant does not contest her finding (Doc. 12 at Page 12). However, the ALJ went on to say, "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. at 16) "Ultimately," the ALJ determined, "the claimant alleges a greater degree of debilitation than the medical evidence can support." (*Id.* at 19.) The ALJ covers a variety of evidence to support her conclusion, including Plaintiff's daily activities, the effectiveness of medication, objective medical evidence, and treatment history. (*Id.* at 15-19.) Substantial evidence supports the ALJ's conclusion in this case.

The ALJ began by noting that Plaintiff's current application alleges disability solely based on mental illness, including bipolar disorder, schizophrenia, dyslexia, and psychosis. (Tr. at 15.) First, the ALJ considered Plaintiff's daily activities in analyzing her subjective reports of symptoms (Tr. at 15-16.), but the ALJ did not rely *solely* on Plaintiff's daily activities in assessing those subjective complaints. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding that an ALJ may consider daily activities in assessing a Plaintiff's credibility); *see also* 20 C.F.R. §

16

404.1529(c)(3) (specifically listing daily activities as a factor to consider in evaluating a claimant's credibility). The ALJ analyzed Plaintiff's activities as one factor along with the objective medical evidence and her treatment to relieve her symptoms. (Tr. at 15-19.) The ALJ noted that Plaintiff can do weekly laundry, help with cooking and cleaning, shop for groceries with her mother, wash dishes, dust, independently care for herself, and Plaintiff and does not require assistance when taking medications or paying bills. (Tr. at 290-97.) Additionally, Plaintiff likes to read and spend time with friends (Tr. at 286), which the ALJ correctly identified as evidence that her condition does not totally affect her ability to complete tasks, concentrate or get along with others. (Tr. at 16.)

The ALJ noted that Plaintiff's primary limitations in performing her daily activities were physical, not mental, in nature (Tr. at 16, 295-97), which is inconsistent with the basis for Plaintiff's application. Although Plaintiff reports suicidal thoughts when she is "real stressed" (Tr. at 67), the contemplations are eased after calling friends and dissipated after separating from her husband and moving in with her parents (*See* Tr. at 81, 470; *cf.* Tr. at 476, 462-470). The record shows that Plaintiff is pleased with her medications (Tr. at 461, 470), including Cymbalta and Lithium for "mental problems" and over-the-counter Melatonin to aid sleep (Tr. at 267).

Regarding her physical health, Plaintiff testified at her hearing that she has undergone eleven surgeries, some of which were elective (Tr. at 62, 84-85). Plaintiff reported issues caused from three bulging discs, including three epidural blocks on her neck. (*Id.*) She also underwent knee surgery in 2007. (Tr. at 85.) At her hearing, however, she testified that she returned to work for at least five years after each of her surgeries. (Tr. at 62-63.) She stopped working in 2014 because she could no longer perform her duties due to pain in her back, neck and shoulders. (Tr. at 61-62.)

Plaintiff subjectively complained that, on a daily basis, she currently suffers a "7/10" pain average due to physical limitations including neck, back, knee, shoulder, and ankle pain sometimes resulting in the use of a cane, days in bed, and an inability to lift 10 or more pounds. (Tr. at 75, 287, 290-97.). To limit the pain, Plaintiff claims she takes seven Tylenol PM tablets in the evenings. (Tr. at 74.) The ALJ gave no weight to her excessive use of the tablets because the treating psychiatrist records do not show any symptoms that would require this routine. (Tr. at 18.)

The ALJ found that "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. at 16.) In regard to Plaintiff's mental health, the ALJ noted that Plaintiff required a "conservative care" plan that included only medication

monitoring and no ongoing psychotherapy services. (Tr. at 17, 470.) The record shows that Plaintiff presented at the Walker Baptist Medical Center Emergency Department for ongoing suicidal thoughts for one year on December 8, 2014, where she was admitted and later discharged on December 12, 2014. (Tr. at 425.) The same report indicated that Plaintiff said she had not been taking her medications for a year and had been kicked out of her home by her husband. (*Id.*) Even though Plaintiff was admitted for suicidal thoughts, the record showed that she did not have a plan to commit suicide, did not contemplate harming herself, and had not already injured herself. (*Id.*) In the history of the present illness, the notes state, "Essentially no specific stressors are noted and patient is very vague about the symptoms and denies any suicidal or homicidal ideation or plan to me. Does not appear to be responding to internal stimuli, and appeared to be displaying a quite full range affect." (Tr. at 435.) Plaintiff was prescribed Celexa and Neurontin at that time. (Tr. at 437.)

After her discharge, Plaintiff was seen at Northwest Alabama Mental Health Center in March 2015, February 2016, September 2016, January 2017, and April 2017. (Tr. at 452-81.) As the ALJ noted in her decision, the treating psychiatrist, Dr. Clyde McLane, documented that Plaintiff was appropriately dressed with normal psychomotor activity and appropriate eye contact, speaking style, memory, mood/affect, and rapport in each of Plaintiff's successive visits from September

19

2016 to April 2017. (Tr. at 461-68.) His reports from those visits also indicated that Plaintiff exhibited average intelligence, was oriented, and showed fair judgment and insight, as well as normally organized thoughts and unremarkable thinking style. (*Id.*) Plaintiff also demonstrated average thought content and intact capacity for activities of daily living. (*Id.*) Dr. McLane's reports show that Plaintiff denied suicidal and homicidal ideation, though there was some internal inconsistency on this point. *Compare* Tr. at 459 ("Suicidal/Homicidal Ideations: Recent suicidal ideations (3/31/17), but no attempt; History: Suicidal ideations over a year ago") *with* Tr. at 470 ("*Suicidal Ideation History Over 1 year ago").

Plaintiff was diagnosed as having major depressive disorder, single episode unspecified, as well as generalized anxiety disorder. (Tr. at 470.) Plaintiff also reported being pleased with her medication. (*Id.*) Plaintiff's identified strengths included living with her parents and regular contact with her children, as well as having housing and transportation, a religious belief/practice, social contacts, and a desire to continue services. (Tr. at 470.) Barriers to Plaintiff's long-term recovery included her history of suicidal ideations, lack of income and insurance, the loss of her grandparents, separation from her reportedly abusive husband, in addition to a history of domestic violence and being a rape victim (for which she declined further help.) (*Id.*) Still, the only indicated treatment, supports, or services prescribed were

physician medical assessment/treatment and medication monitoring. (*Id.*) February 2017 ER records mirror Dr. Clyde's findings, noting Plaintiff's mood, affect, and behavior as "normal." (Tr. at 349.) Accordingly, the record includes substantial evidence to support the ALJ's decision that the Plaintiff's statements about the intensity, persistence, and limiting effects of her mental health issues are not consistent with the medical evidence.

Physically, Plaintiff says she has "horrible" problems with balance and hand tremors, which are worse on her right side. (Tr. at 71-74.) She also testified that a doctor noticed 20 accompanying symptoms of Parkinson's disease (*id.*) and wanted to continue the hearing until after testing for the disease could be conducted (Tr. at 51-54). As discussed above, the record does not indicate any attempt to submit the test results after the ALJ denied the continuance. The ALJ determined that the medical record does not support this claim based on a lack of objective evidence and inconsistency between the objective evidence and Plaintiff's complaints concerning her symptoms. (Tr. at 18.)

The ALJ gave greater weight to physical conditions for which the Plaintiff presented objective medical evidence, specifically citing the cervical spine CT study in September 2016, the exam at the Kirklin Clinic in November 2016, and the lumbar x-rays in February 2017. (Tr. at 17.) Plaintiff's cervical spine CT revealed no acute

21

injury, only mild disk and facet joint degenerative changes without any significant spinal canal narrowing or foraminal stenosis at any level, though multiple prominent cervical lymph nodes bilaterally were found. (Tr. at 332.)

In November 2016, Plaintiff was examined at the UAB Kirklin Clinic. (Tr. at 337-38.) In this initial exam to establish care, Plaintiff's exam revealed reduced cervical lordosis with limited cervical extension and rotation. (*Id.*) Plaintiff also displayed TTP at the paraspinals and upper trapezius bilaterally. (*Id.*) Her tests for Hoffman's and Spurling's were negative bilaterally. (*Id.*) Ultimately, the exam demonstrated that Plaintiff exhibited normal muscle bulk and tone of the upper extremities bilaterally, as well as full 5/5 motor function. (*Id.*) Plaintiff showed no acute distress, no asymmetry of the cervical, thoracic, or lumbar spine, but she displayed normal gait and coordination. (*Id.*) Her exam exposed no additional motor, sensory, or reflex abnormalities. (*Id.*) Plaintiff was, however, diagnosed with cervical spondylosis (arthritis) and encouraged to attend physical therapy and return for a follow-up in three months. (Tr. at 338.) The ALJ noted that Plaintiff was unsure of her ability to arrange transportation and that the record was silent as to Plaintiff's return for therapy or the follow-up appointment (Tr. at 18.)

Finally, Plaintiff's lumbar x-ray in February 2017 revealed moderate lower lumbar facet arthropathy with well-maintained disk height and normal vertebral body

height and alignment. (Tr. at 350.) During this visit for severe ("10/10") chronic lower back pain, Plaintiff denied any bladder or bowel incontinences, leg pain, numbness, paresthesias, perianal numbness, tingling, or weakness.  (Tr. at 347-48.) The exam showed bilateral paraspinal muscle tenderness with no bony tenderness, normal range of motion (Tr. at 349), and the ALJ noted that the record indicated "no finding of motor, sensory, reflex, gait or focal neurological deficit" (Tr. at 18). The ALJ highlighted that Plaintiff also commented during the visit that she was "trying to get cleared for [her] disability." (Tr. at 347.) That statement, along with a lack of elevated heart rate, blood pressure, or aspirations that might correspond with such a severe level of pain, lead the ALJ to correctly conclude that medical evidence does not support the intensity, persistence, and limitations that Plaintiff claims result from her subjective pain. (Tr. at 347-50.)

The ALJ also properly described the weight given to the medical opinions provided and the reasons for attaching that weigh to the opinions. (Tr. at 18-19.) Dr. Sellman's opinion of no severe physical impairment was unpersuasive because of the evidence revealing degenerative disk disease. (*Id.*) State agency psychologist, Robert Bare, PhD, was persuasive because his finding of moderate or less mental limitation was consistent with the limited evidence and Plaintiff's documented responses to conservative treatment. (*Id.*)

In sum, the ALJ determination that Plaintiff's alleged symptoms are greater than what the objective record demonstrates is supported by the Plaintiff's medical records for both mental and physical limitations. As the ALJ noted, even with the degenerative disease/osteoarthritis findings, "the few visits in the record and then the lack of complaint, the lack of finding, and/or the denial of symptoms at those visits does not corroborate the claimant [has] pain or symptoms of the frequency, duration, or severity alleged." (Tr. at 18.) Despite Plaintiff's subjective complaints of pain, the ALJ's consideration of the objective medical evidence shows that she did not have functional limitations greater than those in the RFC that would affect her capacity to work. Although Plaintiff exhibited medically determinable physical and mental impairments, the ALJ properly accounted for these minimal limitations caused by her pain by limiting her to light work with several additional restrictions listed. (Tr. at 20.)

## IV.   Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 7, 2021.

L. Scott Coogler
United States District Judge

206728